EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**CASE NO.  22-cr-351-RM**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**

**1.    CROSSROADS REPAIR, LLC,**

        **Defendant.**

---

## DEFERRED PROSECUTION AGREEMENT

Defendant Crossroads Repair, LLC ("Crossroads") (and its subsidiaries and affiliates, including but not limited to Hofmann Trucking LLC), by its undersigned representative, reflected in Attachment A, and the United States Attorney's Office for the District of Colorado ("the Government") enter into this deferred prosecution agreement ("the Agreement"), the terms and conditions of which are as follows:

### Criminal Information and Acceptance of Responsibility

1.    Crossroads acknowledges and agrees that the Government will file a one-count criminal Information in the United States District Court for the District of Colorado charging Crossroads with one count of Conspiracy to Violate the Clean Air Act, in violation of Title 18, United States Code, Section 371, and Title 42, United States Code, Section 7413(c)(2)(C), (the "Information"), arising out of the conduct described in the Statement of Facts, attached hereto as Attachment B and incorporated by reference into this Agreement ("Covered Conduct").  In so doing, Crossroads: (a) knowingly

1

waives any right it may have to indictment on this charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); (b) knowingly waives any objection with respect to venue to any charges by the United States arising out of the Covered Conduct and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Colorado.  The Government agrees to defer prosecution of Crossroads pursuant to the terms and conditions described below.

2.    Crossroads admits, accepts, and acknowledges that it is responsible under United States federal law for the acts of its owners, employees, and agents as charged in the Information, and as set forth in the Statement of Facts, and that the allegations described in the Information and the facts described in the Statement of Facts are true and accurate.  Should the Government pursue the prosecution that is deferred by this Agreement, Crossroads stipulates to the admissibility of the Statement of Facts in any proceeding by the Government, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Statement of Facts at any such proceeding. Crossroads agrees that, effective as of the date Crossroads signs this Agreement, in any prosecution that is deferred by this Agreement, it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. In addition, in connection therewith, Crossroads agrees not to assert any

claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") or any other federal rule that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form.

## Term of the Agreement

3.      This Agreement is effective for a period beginning on the date on which the Information is filed (the "Effective Date") and ending thirty-six months after that date (the "Term").  After twenty-four months, Crossroads may request that the Government terminate this Agreement early.  If Crossroads has satisfactorily met all requirements of this Agreement, the Government will likely agree to early termination of the Agreement. If the Court refuses to grant exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), the Term shall be deemed to have not begun and all the provisions of the Agreement shall be deemed null and void, except that the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts shall be tolled from the date on which this Agreement was signed until the date the Court refuses to grant the exclusion of time.

## Relevant Considerations

4.      The Government enters into this Agreement based on the individual facts and circumstances presented by this case and Crossroads, including:

      a.      Crossroads cooperated extensively and fulsomely in this investigation, providing information about its own conduct and the conduct of others, and has agreed to continue its cooperation;

3

b.      Crossroads provided the Government with all relevant facts known to it, including information about the individuals involved in the Covered Conduct, and assisted the Government in understanding the technical complexities of diesel vehicle emission control systems and practices utilized to alter such systems;

c.      Crossroads immediately ceased the Covered Conduct;

d.      Crossroads readily agreed to improve its compliance measures, as set forth in Attachment C to this Agreement (Compliance Program);

e.      Crossroads readily agreed to submit annual reports to the Government, as set forth in Attachment D (Compliance Reporting).

### Future Cooperation and Disclosure Requirements

5.      Crossroads shall cooperate fully with the Government in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts, subject to applicable laws and regulations, until the later of the date upon which all related investigations and potential prosecutions arising out of such conduct are concluded or the end of the Term of this Agreement.  Crossroads agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

a.      Crossroads shall truthfully disclose all factual information requested by the Government.

b.      Crossroads agrees to affirmatively furnish to the government all documents and other material that may be relevant and that are in the defendant's possession or control.

4

    c.    Crossroads, through its owners, employees, or agents, agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government.

    d.    Crossroads agrees to at all times give complete, truthful, and accurate information and testimony and to fully and truthfully disclose all information with respect to the activities of the defendants and others concerning all matters about which the government inquires.

### Total Assessment

6.    The Government and Crossroads agree that Crossroads will be liable for a total assessment of **$117,500**, to include a fine and an amount dedicated to a community service project, and with 25% of the total assessment to be held in abeyance and forgiven pending successful completion of the term of this Agreement.

7.    Crossroads agrees to direct $50,000 to a community service project not more than nine months after the Agreement is approved by the Court pursuant to payment instructions provided by the Government.  As to the remaining $38,125, Crossroads agrees to direct that amount to the general court fund not more than nine months after the Agreement is approved by the Court, with the caveat that the government will permit Crossroads to restore up to three tampered vehicles to stock within that timeframe and will reduce the $38,125 fine by $10,000 for each restored vehicle upon receiving proof of restoration.

### Conditional Release from Liability

8.    Subject to the provisions in the section titled "Breach of the Agreement"

below, the Government agrees that it will not bring any criminal case against Crossroads relating to any of the Covered Conduct.  The Government, however, may use any information related to the Covered Conduct against Crossroads: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

9.     This Agreement does not provide any protection against prosecution for any future conduct by Crossroads.

## Compliance and Reporting Program

10.     Crossroads agrees to enter into a Compliance and Reporting Program (detailed in Attachments C and D).  As one requirement of the Compliance Program (and as detailed further therein), Crossroads agrees to cease operating and to destroy or scrap any deleted/tampered vehicles it owns or operates (or that a subsidiary or affiliate owns or operates) not more than six months after this Agreement is approved by the Court. Those vehicles may be sold for scrap so long as they remain inoperable. The government agrees that Crossroads may restore to factory settings up to three of these deleted/tampered vehicles, and will reduce the fine by $10,000 for each vehicle. These vehicles are specifically indicated by an "X" in the table on page 5 of the Statement of Facts.

## Deferred Prosecution

11.     The Government agrees that any prosecution of Crossroads for the Covered Conduct described in the attached Statement of Facts is hereby deferred for

the Term of this Agreement. To the extent there is conduct disclosed by Crossroads that is not set forth in the attached Statement of Facts or Information, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

12.     The Government further agrees that if Crossroads fully complies with all of its obligations under this Agreement, the Government will not continue the criminal prosecution against Crossroads described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire.  Within thirty days of this Agreement's expiration, the Government shall seek dismissal with prejudice of the criminal Information filed against Crossroads described in Paragraph 1, and agrees not to file charges in the future against Crossroads based on the Covered Conduct described in the attached Statement of Facts. If, however, the Government determines during this thirty-day period that the Company breached the Agreement during the Term, the Government's ability to pursue other remedies remains in full effect.

### Breach of the Agreement

13.     If, during the Term of this Agreement, Crossroads (a) commits any criminal violation under United States federal law; (b) provides in connection with this Agreement materially false, incomplete, or misleading information; (c) fails to cooperate as set forth in this Agreement; (d) fails to implement the compliance measures as set forth in Attachment C; or (e) otherwise fails to perform or fulfill its obligations under this Agreement, Crossroads shall thereafter be subject to prosecution for any federal criminal violation of which the Government has knowledge, including, but not limited to, the charge in the Information described in Paragraph 1, which may be pursued by the

7

Government in the United States District Court for the District of Colorado or any other appropriate venue.  Determination of whether Crossroads has breached the Agreement and whether to pursue prosecution of Crossroads shall be in the Government's sole discretion.  Any such prosecution may be premised on information obtained by the Government from any sources, including information provided by Crossroads or its personnel.  Any such prosecution relating to the Covered Conduct or relating to conduct associated with the Covered Conduct and known to the Government before the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against Crossroads, or its subsidiaries and affiliates, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year.  Thus, by signing this Agreement, Crossroads agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

14.    In the event the Government determines that Crossroads has breached this Agreement, the Government agrees to provide Crossroads with written notice of such breach before instituting any prosecution resulting from such breach.  Within thirty days of receipt of such notice, Crossroads shall have the opportunity to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions Crossroads has taken to address and remediate the situation, which explanation the Government shall consider in determining whether to pursue prosecution of the Company.

15.    In the event the Government determines that Crossroads has breached

this agreement:  (a) all statements made by or on behalf of Crossroads to the Government or to the Court, including the attached Statement of Facts, and any testimony given by Crossroads before a grand jury, a court, or any tribunal, whether before or after this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Government against Crossroads, provided such statements or testimony are otherwise admissible under the Federal Rules of Evidence, except for the attached Statement of Facts, which is admissible in whole; and (b) Crossroads shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, Section 1B1.1(a) of the USSG, or any other federal rule that any such statements or testimony made by or on behalf of Crossroads before or after this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.  The decision whether conduct or statements of any present or future owner, or employee, or any person acting on behalf of, or at the direction of, Crossroads, will be imputed to Crossroads for the purpose of determining whether Crossroads has violated any provision of this Agreement shall be in the sole discretion of the Government.

16.    Crossroads acknowledges that the Government has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if Crossroads breaches this Agreement and this matter proceeds to judgment.  Crossroads further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

### Sale, Merger, or Other Change in Corporate Form of Crossroads

17.    Crossroads agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.  The purchaser or successor in interest must also agree in writing that the Government's ability to declare breach under this Agreement is applicable in full force to that entity.  Crossroads agrees that the failure to include these provisions in the transaction will make any such transaction null and void. Crossroads shall provide notice to the Government at least thirty days prior to undertaking any such sale, merger, transfer, or other change in corporate form.  The Government shall notify Crossroads prior to such transaction (or series of transactions) if it determines that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement.  If, at any time during the Term, Crossroads engages in a transaction that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Government may deem it a breach of this Agreement.

### Limitations on Binding Effect of Agreement

18.    This Agreement is binding on Crossroads and the Government but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Government will bring the cooperation of Crossroads and its compliance with its other obligations under this Agreement to the

attention of such agencies and authorities if requested to do so by Crossroads.

## Notice

19.     Any notice to the Government under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

> Chief, Criminal Division
> U.S. Attorney's Office
> District of Colorado
> 1801 California Street, Ste 1600
> Denver, CO 80202

20.     Any notice to Crossroads under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

> Crossroads
> Attn: Curtis Waldie
> 8060 36th St. SE,
> Jamestown, ND 58401-9510

21.     Notice shall be effective upon actual receipt by the Government or Crossroads.

## Complete Agreement

22.     This Agreement sets forth all the terms of the agreement between Crossroads and the Government.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Government, the attorneys for Crossroads, and a duly authorized representative of Crossroads.

**AGREED:**

FOR CROSSROADS REPAIR INC.:

Date: 12-27-2022    By: _Curtis Waldie_
Curtis Waldie
Co-Owner, Crossroads Diesel

Date: 12-28-2022    By: _____
Bruce Quick
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
Telephone: 701.237.6983
Email: bquick@vogellaw.com
Attorney for Defendant
Attorney for Defendant

Date: 12-28-2022    By: _____
Brent Edison
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
Telephone: 701.237.6983
Email: bedison@vogellaw.com
Attorney for Defendant

FOR THE U.S. ATTORNEY'S OFFICE, DISTRICT OF COLORADO:

Date: __12/29/2022__        By:        COLE FINEGAN
                                       United States Attorney

                                       By: _____
                                       Rebecca S. Weber
                                       Assistant United States Attorney
                                       United States Attorney's Office
                                       1801 California Street, Suite 1600
                                       Denver, Colorado 80202
                                       Telephone: (303) 454-0100
                                       Fax: (303) 454-0409
                                       E-mail: Rebecca.Weber@usdoj.gov
                                       Attorney for the United States

                                       By: _____
                                       Linda S. Kato
                                       Special Assistant United States Attorney
                                       United States Attorney's Office
                                       1801 California Street, Suite 1600
                                       Denver, Colorado 80202
                                       Telephone: (303) 312-7149
                                       Fax: (303) 312-6953
                                       E-mail: Linda.Kato@epa.gov
                                       Attorney for the United States

ATTACHMENT A

## CERTIFICATE OF AUTHORIZED REPRESENTATIVE

I have read the Deferred Prosecution Agreement between CROSSROADS REPAIR, LLC ("CROSSROADS") and the United States Attorney's Office for the District of Colorado and carefully reviewed every part of it with outside counsel.

I hereby certify that I am a duly appointed corporate officer and/or authorized representative of CROSSROADS and its affiliate HOFMANN TRUCKING, LLC.

I am authorized, empowered, and directed to take any and all actions on behalf of CROSSROADS as may be necessary or appropriate and to enter into and comply with all provisions of a Deferred Prosecution Agreement with the United States Attorney's for the District of Colorado.

I understand the terms of the Deferred Prosecution Agreement and voluntarily agree, on behalf of CROSSROADS, to each of its terms. Before signing this agreement, I consulted with outside counsel for CROSSROADS. Outside counsel fully advised me of the company's rights, possible defenses, the Sentencing Guidelines provisions, and the consequences of entering into this Deferred Prosecution Agreement.

No promises or inducements have been made other than those contained in the Deferred Prosecution Agreement. No one has threatened or forced me in any way to enter into this Deferred Prosecution Agreement.

I am satisfied with outside counsel's representation in this matter.


By:                                              Date:

Curtis Waldie                           12-27-2022
Curtis Waldie
Co-Owner
CROSSROADS REPAIR, LLC

ATTACHMENT B

**STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement (the "Agreement") between the United States Attorney's Office for the District of Colorado ("the Government") and CROSSROADS REPAIR, LLC ("CROSSROADS"). CROSSROADS hereby agrees and stipulates that the following information is true and accurate. CROSSROADS admits, accepts and acknowledges that it is responsible for the acts of its owners, employees, and agents as set forth below. Should the Government pursue the prosecution that is deferred by the Agreement, CROSSROADS agrees that it will neither contest the admissibility of, nor contradict, the Statement of Facts in any such processing. The following facts establish beyond a reasonable doubt the charges set forth in the criminal Information attached to this Agreement.

CROSSROADS is a diesel repair shop with locations in Jamestown, North Dakota and Tioga, North Dakota. CROSSROADS is affiliated with HOFMANN TRUCKING, LLC ("HOFMANN"). Though CROSSROADS and HOFMANN are separate limited liability companies, they are both owned by Curtis Waldie and the Estate of Larry Hofmann and have the same principal address in Jamestown, North Dakota.

Company E.D. is a diesel repair shop located in Windsor, Colorado and co-owned and operated by Person A. Company E.D. employed Person B and Person C.

From in or around October 2017 through in or around July 2020, CROSSROADS disabled emissions control components on its customers' or affiliates' heavy-duty diesel

vehicles. In order to complete the "delete" jobs on these vehicles, CROSSROADS conspired with Company E.D. to tamper with the "on board diagnostic" systems (OBDs)[1] on these vehicles. This tampering is frequently referred to as "tuning" an OBD. One purpose for "tuning" an OBD is to allow the vehicles to continue to seemingly operate normally while the emissions control system is disabled, which reduces the high costs associated with maintaining or repairing components of the emissions control systems on heavy-duty diesel trucks. However, as a consequence, tampered vehicles spew substantially more deleterious pollutants such as nitrogen oxides ($NO_x$), carbon monoxide (CO), non-methane hydrocarbons (NMHC) and particulate matter (PM) into the air, presenting a risk to the environment and public health. Tests conducted by EPA have found that completely deleting a diesel truck's emissions controls can increase the truck's tailpipe emissions of $NO_x$ by a factor of approximately 310 times, tailpipe CO by a factor of approximately 120 times, tailpipe NMHC by a factor of approximately 1,100 times, and tailpipe PM by a factor of approximately 40 times.

Company E.D., Person A, and others associated with Company E.D. would instruct individuals at CROSSROADS to connect a laptop computer to the vehicle's OBD port. Through a remote connection, using a program called "Team Viewer," individuals at Company E.D. located in Colorado, would run software programs to reprogram or "tune" the vehicle's OBD. These programs would tamper with, render

---

[1] OBDs are monitoring devices required under the Clean Air Act to be installed on vehicles to monitor the vehicles' emissions control systems to ensure they are functioning properly. If an OBD detects a malfunction in the emissions control system, it will illuminate a "malfunction indicator light" (MIL) on the vehicle's dashboard and record a "diagnostic trouble code" (DTC) in the vehicle's computer, which facilitates the detection and diagnosis of malfunctions. Disabling the MIL and DTC functions serves to conceal the malfunction caused by tampering. If the malfunction is serious and remains unresolved, the OBD may also cause some vehicles to "derate" or go into "limp mode," that is, reduce the vehicle's maximum speed to incentivize the operator to repair the malfunction.

inaccurate, and disable the monitoring functions of the OBDs so they would no longer detect malfunctions in the emissions control systems.

Although the laptop computer screen would "go black" while Company E.D. installed the tune on the vehicle's OBD, an individual at CROSSROADS was able to view the username of the operator and identified that Person B and Person C performed the tunes.

CROSSROADS received instruction from Company E.D. on how to remove or alter hardware components on the emissions control systems of vehicles. CROSSROADS routinely removed or altered hardware components on customers' vehicles, including hollowing out or removing the diesel particulate filter ("DPF") and/or the selective catalytic reduction ("SCR") system and removing or blocking off the exhaust gas recirculation ("EGR").

In furtherance of the conspiracy and to effect its objects, coconspirators, including CROSSROADS, Company E.D., Person A, and others, committed the following overt acts:

CROSSROADS engaged Company E.D. to tamper with, or tune, a vehicle's OBD by filling out an "ECM[2] Form" that provided key parameters for the vehicle, such as the engine serial number, the truck make and model, the VIN, the tire brand and size, and the turbo type. The information on this form was used by Company E.D. to tune the OBD to prevent it from monitoring for and detecting malfunctions in the emissions control system. Many of these "ECM Forms" instructed Company E.D. as to which

---

[2] An "electronic control module" (ECM) is essentially an on-board computer that receives inputs from various sensors and sends outputs through activators to control engine, vehicle, or equipment functions, including emission control components. OBDs operate as a system within the ECM.

monitoring function of the vehicle's OBD should be disabled, using language such as "DPF, DEF, EGR Delete."[3]  An individual at CROSSROADS then faxed the ECM Form to Company E.D. in Colorado.

After receiving the ECM Form, individuals at Company E.D. would contact individuals at CROSSROADS and instruct them to plug a laptop computer, usually purchased from Company E.D., into the vehicle's OBD port.  Individuals at Company E.D. then tuned or reprogrammed the OBD, tampering with and rendering ineffective its monitoring function.

For each tampered vehicle, Company E.D. sent an invoice to CROSSROADS charging approximately $2,300.  Company E.D. typically used the code language "Cummins ECM Repair" on the invoice to disguise the line item for emissions control system tampering.

CROSSROADS typically charged its customers an additional $500 in excess of Company E.D.'s charges for the tampering, which represented CROSSROADS's profit for the tuning of each vehicle.

Between in or around October 2017 and July 2020, CROSSROADS paid Company E.D. over $43,000 to disable the OBDs on the following 19 commercial motor vehicles containing heavy-duty diesel engines. Each of these vehicles was required by the Clean Air Act and by regulation to have a functioning OBD installed and maintained. As of July 2022, nine of the vehicles below were owned or operated by CROSSROADS, HOFMANN, or other subsidiaries or affiliates, and were still in operation with the

---

[3]  The "exhaust gas recirculation" (EGR) system and the "diesel particulate filter" (DPF) are components of a heavy-duty diesel vehicle's emissions control system. "Diesel exhaust fluid" (DEF) is used in the "selective catalytic reduction" (SCR) system, another emissions control component.

emissions systems disabled.  Those nine vehicles are marked with an "X" in the column to the far right.

| E.D. Invoice Number | Engine Manu-facturer | Engine Serial Number | Engine Year | Engine Family | Price E.D. Charged | In Operation |
|---|---|---|---|---|---|---|
| 135793 | Cummins | 7967428 | 2013 | | $2,300 | X |
| 135927 | Cummins | 60810436 | 2014 | | $2,300 | |
| 136287 | Cummins | 79705783 | 2013 | | $2,300 | X |
| 136326 | Cummins | 79674130 | 2013 | | $2,300 | |
| 136391 | Cummins | 79673669 | 2013 | | $2,300 | |
| 136442 | Cummins | 79771062 | 2014 | | $2,300 | X |
| 136751 | Cummins | 79674129 | 2013 | | $2,300 | X |
| 136817 | Cummins | 79683365 | 2013 | | $2,300 | |
| 137007 | Cummins | 79673667 | 2013 | | $2,300 | X |
| 137056 | Cummins | 79771065 | 2014 | | $2,300 | X |
| 137137 | Cummins | 79531829 | 2011 | BCEXH09 12XAP | $2,300 | |
| 137443 | Cummins | 79674126 | 2013 | | $2,300 | X |
| 137556 | Cummins | 60810738 | 2014 | | $2,300 | |
| 138003 | Cummins | 79819959 | 2015 | | $2,300 | |
| 138385 | Cummins | 79585824 | 2015 | | $2,300 | X |
| 139654 | Cummins | 79674125 | 2013 | | $2,300 | |
| 139977 | Cummins | 79811042 | 2015 | | $2,300 | |
| 141339 | Cummins | 79705454 | 2013 | | $2,300 | X |
| 142526 | Cummins | 79783522 | 2014 | | $2,300 | |

ATTACHMENT C

## COMPLIANCE PROGRAM

CROSSROADS REPAIR, LLC, and its subsidiaries or affiliates (including, but not limited to, HOFMANN Trucking, LLC) ("the defendant"), through its authorized representative (set forth in Attachment A), agrees to the following monitoring and compliance measures during the term of the Deferred Prosecution Agreement:

Definitions:

a.  "Vehicle" means any (1) "motor vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(2), which includes any self-propelled truck, semi-truck, car, van, camper, bus, or any other vehicle used to transport persons or property on streets or highways; and (2) "nonroad vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(11), which includes any engine-powered vehicle such as construction, agricultural, or recreational equipment that is not designed for use on streets or highways. For purposes of this Compliance Program, the term "vehicle" does not include vehicles that are used solely for competition and are not authorized for use on streets or highways.

b.  "Vehicle tampering" means any steps taken to remove, render inoperable, override, modify, or alter any component of any vehicle's emissions control system, including but not limited to the selective catalytic reduction (SCR), exhaust gas recirculation (EGR), periodic trap oxidizer (PTOX), diesel particulate filter (DPF), diesel oxidation catalyst (DOC), or engine control module (ECM), or the onboard diagnostic (OBD) system.

c.  "Delete device" includes, but is not limited to, an, "EGR delete," "DPF delete," "defeats," "defeat device," "delete kit," "upgrade kit," "conversion kit," "tuner," "tune," "programmer," "block plate," "straight pipe," or any other device designed to override, modify, alter, or allow the removal of any component of a vehicle's emissions control system.

d.  "Tampered vehicle" means any vehicle that has been modified pursuant to "vehicle tampering."

Terms:

1.  Within six months of Court approval of the Deferred Prosecution Agreement, the defendant agrees to cease operating and to destroy or scrap any tampered vehicles it owns or operates (or that a subsidiary or affiliate owns or operates), or to restore to stock up to three of these vehicles. These vehicles are marked with an "X" in the table on page 5 of the Statement of Facts. If any other vehicles are later identified as being tampered vehicles that are owned or operated by the

1

defendant or its subsidiaries or affiliates, the defendant agrees to immediately cease operating and to destroy or scrap those vehicles.

    a. For any tampered vehicles that are restored to stock, the defendant shall obtain and present a certification from a dealership licensed by the vehicle's Original Equipment Manufacturer (OEM) that the vehicle has been restored to its certified configuration.

    b. For any tampered vehicles that are not restored to stock, the defendant shall ensure that the vehicle is not sold intact or in a condition that allows the vehicle to be driven. The "long block" may be removed and sold for scrap, parts, or recycling, so long as the intake and exhaust manifolds are removed. The manifolds must be sold for scrap or otherwise disposed of. Any other emission control components that have been tampered with must be sold for scrap or otherwise disposed of. The remainder of the vehicle can be sold for scrap, parts, or recycling.

2. The defendant agrees to permit unrestricted entry to federal, state, and local officials to inspect premises, including hard copy and electronic documents, at any time and without advance notice, for violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3).

3. The defendant agrees not to engage in, or conspire or cause others to engage in, vehicle tampering.

4. For any tampered vehicle, the defendant agrees not to work on, repair, or service (1) the OBD system or (2) any hardware relating to the emissions control system, including the SCR, EGR, PTOX, DPF, and DOC.

    a. Exception: the defendant may perform work on the OBD and emissions control system of a tampered vehicle for the purpose of restoring the emissions control system on the tampered vehicle to its certified configuration, that is, restoring it to stock.

5. The defendant agrees to submit to the U.S. Attorney's Office an annual report (described in Attachment D) detailing the company's compliance measures and confirming, if true, that the company has not knowingly engaged in any violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3).  The first certification shall be submitted one year from the date on which the Information is filed, and shall be filed annually on that date until the Term of the Agreement is concluded.

ATTACHMENT D

**ANNUAL REPORT**

Definitions:

a. "Vehicle" means any (1) "motor vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(2), which includes any self-propelled truck, semi-truck, car, van, camper, bus, or any other vehicle used to transport persons or property on streets or highways; and (2) "nonroad vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(11), which includes any engine-powered vehicle such as construction, agricultural, or recreational equipment that is not designed for use on streets or highways. For purposes of this Compliance Program, the term "vehicle" does not include vehicles that are used solely for competition and are not authorized for use on streets or highways.

b. "Vehicle tampering" means any steps taken to remove, render inoperable, override, modify, or alter any component of any vehicle's emissions control system, including but not limited to the selective catalytic reduction (SCR), exhaust gas recirculation (EGR), periodic trap oxidizer (PTOX), diesel particulate filter (DPF), diesel oxidation catalyst (DOC), or engine control module (ECM), or the onboard diagnostic (OBD) system, through the use of a "delete device."

c. "Delete device" includes, but is not limited to, an, "EGR delete," "DPF delete," "defeats," "defeat device," "delete kit," "upgrade kit," "conversion kit," "tuner," "tune," "programmer," "block plate," "straight pipe," or any other device designed to override, modify, or alter any component of a vehicle's emissions control system.

d. "Tampered vehicle" means any vehicle that has been modified pursuant to "vehicle tampering."

Please submit the following certification to:

Chief, Criminal Division
U.S. Attorney's Office for the District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202

1

**Certifications**

CROSSROADS REPAIR, LLC ("the defendant" or "the Company"), through its duly authorized representative, certifies the following with respect to CROSSROADS REPAIR, LLC, its affiliates and subsidiaries including but not limited to HOFMANN TRUCKING, LLC, and any of its owners, employees, agents, or contractors:

for the time frame of _____ through _____,

1. The Company has not engaged in, conspired with, or caused others to engage in, vehicle tampering.

2. The Company has not worked on, repaired, or serviced (1) the OBD system; or (2) any hardware relating to the emissions control system, including the SCR, EGR, PTOX, DPF, and DOC; for any tampered vehicle.

3. If the Company has performed work on the OBD and/or emissions control system of a tampered vehicle for the purpose of restoring the emissions control system on the tampered vehicle to its certified configuration, that is, restoring it to stock, please identify any such vehicles in an Attachment by year, make, model, engine serial number, and VIN.

4. The Company has ceased operating and has destroyed or scrapped any vehicle it owned or operated that was subject to "vehicle tampering," or has restored up to three of these vehicles to stock.

5. The Company has not knowingly engaged in any violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3).

6. If the Company is unable to make any of the above certifications, the Company shall detail why in an Attachment to this Certification.


I, as a duly authorized representative of CROSSROADS REPAIR, LLC, certify under penalty of perjury that the foregoing is true and correct.


_____                    _____
Signature                                           Date


_____
Name and Title

2